Lisa Barnett Sween (State Bar No. 191155)
Scott P. Jang (State Bar No. 260191)
Antonio C. Raimundo (State Bar No. 275173)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone:  (415) 394-9400
Facsimile:  (415) 394-9401
Email:  Lisa.Sween@jacksonlewis.com
Email:  Scott.Jang@jacksonlewis.com
Email:  Antonio.Raimundo@jacksonlewis.com

Attorneys for Defendant
SKY CHEFS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DMUCHOWSKY,<br><br>             Plaintiff,<br><br>     v.<br><br>SKY CHEFS, INC., a Delaware corporation doing business as LSG SKY CHEFS; and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 3:17-cv-05521-JCS<br><br>**DEFENDANT SKY CHEFS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    November 9, 2018<br>Time:    9:30 a.m.<br>Judge:   Hon. Joseph C. Spero<br>Court:   Courtroom G - 15th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94102 |

### NOTICE OF MOTION

TO THE HONORABLE COURT, PLAINTIFF ERIC DMUCHOWSKY AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 9, 2018, at 9:30 a.m., in Courtroom G of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Sky Chefs, Inc. ("Sky Chefs") will move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

## STATEMENT OF ISSUES AND RELIEF REQUESTED

Sky Chefs seeks partial summary judgment under Federal Rule of Civil Procedure 56 on the grounds that there are no genuine disputes of material fact and Sky Chefs is entitled to judgment as a matter of law on two issues: (1) Plaintiff's Seventh Cause of Action for alleged failure to pay waged due upon termination and waiting time penalties under California Labor Code sections 201, 202, and 203; and (2) the relevant claim period for Plaintiff's misclassification claims. This motion is based on the Notice of Motion, the following Memorandum of Points and Authorities, the attached declarations and exhibits, Sky Chefs' request for judicial notice and the corresponding documents, the arguments and evidence presented during oral argument, and any other matter the Court may properly consider.

Dated: September 21, 2018                            JACKSON LEWIS P.C.

                                          By:   /s/ Lisa Barnett Sween
                                                Lisa Barnett Sween
                                                Scott P. Jang
                                                Antonio C. Raimundo
                                                Attorneys for Defendant
                                                SKY CHEFS, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Plaintiff Eric Dmuchowsky ("Plaintiff"), the former Director of Operations and second-in-command of Sky Chefs' **540-worker** San Francisco Airport airline catering facility, claims that he was misclassified as an exempt employee during his 16-month employment. Plaintiff alleges that he performed on a daily basis as much as eight hours of non-exempt work, including "prepping and assembling meals, packing and pushing carts, loading and offloading trays of food, moving and cleaning equipment, and dispatching" notwithstanding the fact that his job description, numerous co-workers, and common sense establish otherwise and reveal him performing managerial duties such as supervising and evaluating the performance of hundreds of employees in his seven reporting departments, managing department overtime and labor costs, and responding to regulatory audits regularly performed by the U.S. Food and Drug Administration, local regulatory agencies, and client airlines.

Setting aside the dubious merits of Plaintiff's misclassification allegations, two issues in this case stand undisputed. *First*, Plaintiff's Seventh Cause of Action for alleged failure to pay all wages due upon termination and waiting time penalties under California Labor Code sections 201, 202, and 203 fails as a matter of law because Plaintiff released those claims through the putative class action settlement in *Patricia Teruel v. Sky Chefs, Inc.*, Santa Clara Superior Court, Case No. 114CV268343. *Second*, as Plaintiff conceded during his deposition, the relevant claim period for Plaintiff's misclassification claims are, confined to mid-August 2015 (at the earliest) to the end of his employment on May 18, 2016. In other words, Plaintiff asserted during his deposition that his misclassification allegations ***do not pertain to the first 40% of his 16-month employment with Sky Chefs***. Accordingly, as discussed further below, Sky Chefs is entitled to summary judgment on both of these issues.

II.  **FACTUAL BACKGROUND**

A.  **Plaintiff's Employment with Sky Chefs**

Sky Chefs operates a large catering facility in Burlingame, California, which provides food and drinks to airlines operating out of the nearby San Francisco Airport. (Decl. of David Potts in

3

DEFENDANT SKY CHEFS, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT                                    Case No. 3:17-cv-05521-JCS

Support of Def.'s Mot. for Summary J. ("Potts Decl.") ¶ 2.) Plaintiff worked as the Director of Operations of Sky Chefs' San Francisco Airport facility from February 23, 2015 until his separation on May 18, 2016 for disciplinary reasons. (*Id.* ¶ 6.) Plaintiff was classified as an exempt employee and earned an annual salary of $120,000. (*Id.* ¶ 7.)

### B.   Plaintiff's Job Duties

#### 1.   Plaintiff Served as the Second-in-Command

As Director of Operations, Plaintiff served as the second-in-command of the approximately 540-worker facility. (*Id.* ¶ 8.) Seven operations departments reported directly to Plaintiff: (1) the Hot Food Department (responsible for cooking food); (2) the Cold Food Department (responsible for preparing cold foods); (3) the Assembly Department (responsible for arranging and packing food); (4) the Ramp/Dispatch Department (responsible for loading trucks and delivering food to the airplanes); (5) the Equipment and Sanitation Department (responsible for cleaning dishes and silverware, removing trash, and maintaining facility sanitation); (6) the Warehouse Department (responsible for inventory and storage); and (7) the Materials Department (responsible for facility supplies). (*Id.* ¶ 9.) The staff of each department included at least one manager, several supervisors, and numerous hourly employees and temporary workers. (*Id.* ¶ 10.) For example, the staff of the Assembly Department included one manager, three supervisors, and approximately 40 hourly and temporary workers. (*Id.*)

#### 2.   Plaintiff held the Authority to Hire and Fire Employees

As second-in-command, Plaintiff held the authority to hire, discipline, and fire any of the employees or temporary workers in his departments. (*Id.* ¶ 11; Decl. of Scott Jang, Ex. 1 ("Potts Depo.") at 150:15-153:16, 166:17-167:7.) Moreover, Plaintiff's recommendations and opinions regarding hiring and firing employees in the other departments that did not report directly to him carried great weight because all the departments needed to work and coordinate with the operational departments that Plaintiff oversaw. (Potts Decl. ¶ 11.)

#### 3.   Plaintiff Performed Managerial Duties

As second-in-command, Plaintiff performed managerial duties that required the exercise of discretion and independent judgment, including but not limited to:

4

- Supervising and managing employees (*Id.* ¶ 12(a); Potts Depo. at 146:15-147:23);
- Appraising employee performance (Potts Decl. ¶ 12(b); Potts Depo. at 148:16-21, 167:24-168:4);
- Making hiring decisions (Potts Decl. ¶ 12(c); Potts Depo. at 148:22-25, 150:15-25);
- Making disciplinary and firing decisions (Potts Decl. ¶ 12(d); Potts Depo. at 150:1-8, 166:17-167:7);
- Setting employee schedules (Potts Decl. ¶ 12(e); Potts Depo. at 168:9-169:21);
- Directing employee work (Potts Decl. ¶ 12(f); Potts Depo. at 169:25-170:10);
- Plaining employee work (Potts Decl. ¶ 12(f); Potts Depo. at 170:11-171:6);
- Apportioning employee work (Potts Decl. ¶ 12(f); Potts Depo. at 173:11-21);
- Ensuring the safety of employees and Sky Chefs' property (Potts Decl. ¶ 12(g); Potts Depo. at 174:22-175:3);
- Leading operations meetings (Potts Decl. ¶ 12(h); Potts Depo. at 175:4-176:23);
- Overseeing the budget (Potts Decl. ¶ 12(i); Potts Depo. at 193:22-194:20); and
- Ensuring employee compliance with Sky Chefs' policies, as well as legal and regulatory requirements (Potts Decl. ¶ 12(j); Potts Depo. at 195-7-196:15; Decl. of Scott Jang, Ex. 2 ("Pl.'s Depo.") at 131:21-132:6).

(*Accord* Potts Decl., Ex. 2 ("Pl.'s Job Description")) (listing the following as part of Plaintiff's job duties: (1) executing the business plan; (2) ensuring regulatory compliance; (3) implementing short-term manufacturing planning; (4) overseeing economic and operating performance; (5) ensuring optimal deployment of human, material, and technical resources; (6) ensuring compliance with customer standards; (7) ensuring adequate staffing; (8) providing data for planning and budgeting purposes; and (9) ensuring all materials are ordered).

### C. The Instant Litigation

#### 1. Plaintiff's Complaint

Notwithstanding his executive role and job responsibilities, Plaintiff contends, among other things in his Complaint, that Sky Chefs misclassified him as an exempt employee. Plaintiff asserts eight causes of action: (1) alleged failure to pay overtime; (2) alleged failure to provide rest breaks;

5

(3) alleged failure to provide meal breaks; (4) alleged failure to provide accurate wage statements; (5) alleged failure to pay vacation wages; (6) alleged failure to indemnify business expenses; (7) alleged failure to pay all wages due upon termination; and (8) alleged unlawful business practices. (*See* ECF No. 1 ("Pl.'s Compl.") ¶¶ 12-27.)

### 2. The Relevant Claim Period for the Misclassification Claims

The crux of Plaintiff's misclassification claims is that he allegedly performed half or more of his work hours performing non-exempt duties "such as prepping and assembling meals, packing and pushing carts, loading and offloading trays of food, moving and cleaning equipment, and dispatching." (*Id.* ¶ 5.) Although Plaintiff alleged in his Complaint and Initial Disclosures that he was misclassified throughout his entire employment with Sky Chefs, Plaintiff conceded during his deposition that his misclassification allegations ***do not pertain to the first 40% of his 16-month employment with Sky Chefs***.

Specifically, during his deposition, Plaintiff discussed each of these alleged forms of non-exempt work (*see* Pl.'s Depo. at 212:11-12 (loading and offloading trays; cleaning equipment), 212:15-16 (packing carts), 212:17-18 (prepping and assembling meals), 212:19-23 (dispatching)), and testified that the alleged non-exempt work only began to consume more than half of his work hours after "the end of summer 2015:"

> Q. And, again, with respect to all these tasks that we have just gone through –
>
> A. Okay.
>
> Q. – are we pretty much talking about the end of summer 2015 to the end of your termination [as said], or – I think with respect to maybe packing carts or offloading, you said it may have been a little later. Is that the time frame we are talking about?
>
> A. Yeah. For the most part, yeah. The end of the summer, yes. That's a pretty good estimate of when it started. I mean, it was happening occasionally before, but nothing that – you know, ***it wasn't the majority of my day***.
>
> It was just, you know, one of those things you have to do is jump in, but it wasn't impacting – and you can see by the documents, too, that it wasn't – ***I mean, I was fully able to do my job, and it wasn't impacting it significantly***.

1  (*Id.* at 213:10 – 214:2) (emphasis added).

2  Additionally, Plaintiff clarified and pinpointed the end of summer 2015 as being "around August, September [2015]." (*See id.* at 231:12-232:4; *accord id.* at 208:6-12 (Q. And how long would you spend out packing carts? A. Packing carts? Anywhere from an hour to two hours, three hours. Q. And this is from the summer 2015 all the way to the end of your employment? A. It was a little bit later than the summer of 2015. It was probably, like, towards the early fall, like, maybe September.))

Accordingly, as Plaintiff's deposition testimony makes clear, the relevant claim period for Plaintiff's misclassification claims begins no earlier than mid-August 2015 and ends with Plaintiff's termination for disciplinary reasons on May 18, 2016.

### D. The *Tereul* Settlement

On July 22, 2014, former Sky Chefs employee Patricia Tereul filed a putative class action against Sky Chefs in Santa Clara Superior Court. (*See* Def.'s Mot. for Judicial Notice, Ex. 1.) The Complaint asserted claims for (1) alleged failure to pay wages due upon termination and waiting time penalties under California Labor Code section 203; (2) alleged inaccurate wage statements under California Labor Code section 226; and (3) civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

Sky Chefs settled the matter. Under the Joint Stipulation of Settlement, the putative class released any and all claims for alleged violations of California Labor Code sections 201, 202, and 203. (*See* Def.'s Mot. for Judicial Notice, Ex. 2 at ¶ 15.1.) The Joint Stipulation of Settlement defined the putative class as "all persons whose employment with Sky Chefs ended at any time" during the time period of "July 22, 2011 through August 31, 2016." (*Id.* at ¶¶ 1.8, 1.10.) The Court granted preliminary approval of the settlement on October 20, 2016 (*see* Def.'s Mot. for Judicial Notice, Ex. 3), and granted final approval of the settlement on January 30, 2017 (*see* Def.'s Mot. for Judicial Notice, Ex. 4).

Plaintiff fell within the *Teruel* settlement class since his termination occurred during the time period of "July 22, 2011 through August 31, 2016." (Def.'s Mot. for Judicial Notice, Ex. 2 at ¶ 1.10.) Accordingly, Plaintiff received a *Teruel* settlement check, which he cashed and thereby

7

released any claim against Sky Chefs for alleged failure to pay wages due upon termination and waiting time penalties under California Labor Code sections 201, 202 and 203. (*See* Decl. of Jarrod Salinas ("Salinas Decl.") ¶ 6, Ex. 1.)

### III. LEGAL ANALYSIS

#### A. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). An issue of material fact is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Thrifty Oil Co. v. Bank of America Nat. Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)).

On any claim that the non-moving party will have the burden of proof at trial, the movant may obtain summary judgment either by producing evidence negating an essential element of the non-moving party's claim or by merely pointing out an absence of evidence supporting the non-moving party's claim. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant satisfies this initial burden, then the opposing party must go beyond the pleadings and "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[B]ald assertions or a mere scintilla of evidence in his favor" will not suffice. *Id.* (citation omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 201 F.3d at 1103.

#### B. Plaintiff's Seventh Cause of Action Fails Because He Released Any Such Claim Through the *Teruel* Settlement

"Res judicata applies to a court-approved settlement agreement in a class action dismissed with prejudice." *Villacres v. ABM Industries Inc.*, 189 Cal. App. 4th 562, 577 (2010). Such is the case here. Here, Plaintiff released any claim against Sky Chefs for any purported failure to pay all wages due upon separation and waiting time penalties under California Labor Code sections 201,

202, and 203 by operation of the *Teruel* settlement. It is undisputed that (1) Plaintiff fell within the *Teruel* settlement class; (2) Plaintiff received a settlement check; (3) Plaintiff cashed his settlement check; and (4) Plaintiff thereby released any claim he had against Sky Chefs under California Labor Code sections 201, 202, and 203. Accordingly, Sky Chefs is entitled to summary judgment on Plaintiff's Seventh Cause of Action.

      C.    **The Relevant Claim Period for Plaintiff's Misclassification Claims is Confined to mid-August 2015 to May 18, 2016**

The executive exemption entails six elements: (1) the employee's duties must involve "the management of the enterprise in which [he] is employed or of a customarily recognized department or subdivision thereof;" (2) the employee must customarily and regularly direct the work of two or more other employees; (3) the employee must have the authority to hire or fire employees or his suggestions and recommendations as to hiring, firing, promotion, or other changes in status are given particular weight; (4) the employee must customarily and regularly exercises discretion and independent judgment; (5) the employee must "primarily engage" in duties that meet the test of the exemption; and (6) the employee must earn a monthly salary of not less than two times the state minimum wage for full-time employment. *See* Cal. Labor Code §5151(a); Cal. Industrial Welfare Commission Order No. 1-2001(1)(A)(1), 9-2001(1)(A)(1).

Here, there is no dispute that Plaintiff customarily and regularly directed the work of two or more other employees: he had seven department managers and their respective departments that reported to him. Nor is there any dispute that Plaintiff had the authority to hire or fire employees, or that this recommendations regarding hiring, firing, promotion, or other changes in status, were, given particular weight. Nor is there any dispute that Plaintiff earned a monthly salary of not less than two times the state minimum wage; he earned $120,000.

Rather, Plaintiff's sole contention in this case is that Sky Chefs misclassified him as an exempt employee because he did not perform more than half of his time performing managerial work that required the exercise of discretion and independent judgment. More specifically, Plaintiff alleges that he spent most of his work hours performing non-exempt duties "such as prepping and assembling meals, packing and pushing carts, loading and offloading trays of food, moving and

cleaning equipment, and dispatching." (Pl.'s Compl. ¶ 5.)

Setting aside the actual merit of this contention, Plaintiff's deposition makes clear that the relevant claim period for his misclassification allegations and claims is limited to the time period of mid-August 2015 (at the earliest) to the end of his employment with Sky Chefs on May 18, 2016. Plaintiff conceded in his deposition that he performed his usual executive, managerial work at least the majority of his time prior to then. (*See* Pl.'s Depo. at 213:10 – 214:2) (emphasis added).

Accordingly, Plaintiff's claims for overtime, rest breaks, meal breaks, wage statements, and unlawful business practices (to the extent predicated on misclassification) are confined to the claim period of mid-August 2015 (at the earliest) to the end of Plaintiff's employment with Sky Chefs on May 18, 2016.

### IV. CONCLUSION

For all the reasons set forth above, Sky Chefs respectfully requests the Court grant this motion in its entirety and: (1) enter summary judgment in Sky Chefs' favor on Plaintiff's Seventh Cause of Action; and (2) confine the relevant claim period for Plaintiff's misclassification claims to mid-August 2015 to May 18, 2016.

Dated: September 21, 2018                    JACKSON LEWIS P.C.

                                             By:   /s/ Lisa Barnett Sween
                                                   Lisa Barnett Sween
                                                   Scott P. Jang
                                                   Antonio C. Raimundo
                                                   Attorneys for Defendant
                                                   SKY CHEFS, INC.

4852-9544-8435, v. 1