UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DMUCHOWSKY,<br><br>Plaintiff,<br><br>v.<br><br>SKY CHEFS, INC.,<br><br>Defendant. | Case No. 17-cv-05521-JCS<br><br>**ORDER REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 50 |

## I. INTRODUCTION

Defendant Sky Chefs, Inc. moves for partial summary judgment on one of Plaintiff Eric Dmuchowsky's eight claims in this individual wage-and-hour action based on purported misclassification. Sky Chefs argues that Dmuchowsky's seventh claim, seeking penalties under the California Labor Code for failure to pay wages due at the time of his termination, is barred by a release contained in a class action settlement resolving similar claims. Sky Chefs also sought partial summary judgment limiting the period of purported misclassification, but the parties resolved that issue by stipulation the same day that the motion was filed. The Court held a hearing on November 9, 2018. For the reasons discussed below, Sky Chefs' motion is GRANTED as to Dmuchowsky's seventh claim.[1]

## II. BACKGROUND

### A. Allegations and Claim for Failure to Pay Wages Due Upon Separation

Dmuchowsky alleges that Sky Chefs misclassified him as an exempt employee despite the fact that he performed non-exempt work, and that Sky Chefs therefore violated several provisions of the California Labor Code by, for example, failing to pay overtime wages, failing to provide

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

meal and rest breaks, and failing to provide adequate wage statements. *See generally* Compl. (available in the record as Exhibit A to Sky Chefs' notice of removal, dkt. 1). Sky Chefs' present motion concerns Dmuchowsky's seventh claim, which asserts that Sky Chefs violated section 202[2] of the Labor Code by failing to pay Dmuchowsky all wages earned at the time of his termination, and thus owes Dmuchowsky penalties under section 203 of the Labor Code. *Id.* ¶ 25. Dmuchowsky alleges that Sky Chefs terminated his employment on May 18, 2016, and that although Sky Chefs paid him on that date, it failed to pay "wages due and owing for overtime hours worked, rest breaks and meal periods not given, all earned and unused vacation time, or all reimbursable expenses." *Id.* ¶ 11.

### B. *Teruel* Settlement

Another former Sky Chefs employee, Patricia Teruel, filed a class action against Sky Chefs in 2014. Def.'s Req. for Judicial Notice in Supp. of Reply (dkt. 63-3) Ex. 1 (complaint in *Teruel v. Sky Chefs, Inc.*, No. 114CV268343 (Cal. Super. Ct., Cty. of Santa Clara)). Teruel's complaint included claims for failure to provide timely payment after termination under sections 201, 202, and 203 of the Labor Code, failure to provide accurate itemized wage statements under section 226(a) of the Labor Code, and penalties under the Private Attorneys General Act. *Id.* ¶¶ 28–40. With respect to the first claim, which is at issue here, Teruel alleged as follows:

> Specifically, upon the last date of her employment, [Sky Chefs] did not pay [Teruel] all wages owed immediately on her last date of employment or within 72 hours thereof. [Teruel] alleges that such timing of the payment of wages by [Sky Chefs] were done on a company-wide basis that applied in the exact same manner to all of its terminating employees in California as a matter of corporate policy, practice and procedure, including both voluntary and involuntarily terminated employees.

*Id.* ¶ 31. Teruel further alleged that Sky Chefs' "willful failure to pay wages due and owing upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due." *Id.* ¶ 33.

---

[2] Because Dmuchowsky alleges that he was terminated, this claim would seem to be governed by section 201 of the Labor Code rather than section 202. The distinction is not relevant to the outcome of the present motion, no party has raised it, and the Court does not reach the issue.

2

On October 20, 2016, the California Superior Court for the County of Santa Clara preliminarily approved a class settlement that included the following release:

> "Released Claims" shall mean all claims alleged in the Lawsuit with respect to the Settlement Class only arising during the Class Period, including (1) Failure to Provide Accurate Itemized Statements in Violation of California Labor Code § 226; **(2) Failure to Provide Wages When Due in Violation of California Labor Code §§ 201, 202 and 203**; and (3) Violation of Labor Code §2698 et seq. (the Private Attorney General Act ("PAGA")). Released Claims excludes claims for unemployment insurance, disability, workers' compensation and claims outside of the Class Period. Specifically, the Plaintiff and all members of the settlement class fully and finally release and discharge the Released Parties [i.e., Sky Chefs] from any and **all claims and rights that they may have, whether now known or unknown, suspected or unsuspected, as of the date an order is entered preliminarily approving the settlement, arising out of (1) the alleged late payment of wages due upon separation of employment, including all claims alleged in the Complaint for violations of sections 201, 202 and 203 of the California Labor Code based upon the late payment of wages due upon separation of employment and the facts asserted on the Complaint**, including all claims for attorney's fees, litigation and costs, PAGA penalties, and interest predicated thereon; and (2) the alleged inaccurate final wage statements or alleged manual wage statements, including all claims alleged in the Complaint for violations of section 226 of the California Labor Code and the facts asserted in the Complaint, including all claims for attorney's fees, litigation costs, PAGA penalties, and interest.

Def.'s Req. for Judicial Notice in Supp. of Mot. for Summ. J. ("1st RJN," dkt. 53) Ex. 2 (stipulation of settlement) § 15.1 (emphasis added); *see also id.* Ex. 3 (order granting preliminary approval). The class included all persons whose employment with Sky Chefs ended during the period from July 22, 2011 through August 31, 2016. *Id.* Ex. 1 §§ 1.8, 1.10. The court granted final approval on January 27, 2017. *Id.* Ex. 4.

According to Jarrod Salinas, a senior case manager for the firm that administered the settlement, Dmuchowsky "was identified as a putative class member in *Teruel*, received a settlement check, and deposited the settlement check." Salinas Decl. (dkt. 70) ¶ 6. A copy of an endorsed settlement check made out to Dmuchowsky for $76.86 is attached to Salinas's declaration. *Id.* ¶ 6 & Ex. A.

### C. The Parties' Arguments

#### 1. Sky Chefs' Motion

Sky Chefs asserts that it is entitled to judgment on Dmuchowsky's seventh claim, for failure to pay wages due upon termination, because Dmuchowsky waived and is estopped from pursuing that claim as a result of the *Teruel* settlement. Mot. (dkt. 50) at 7–9. Although Sky Chefs' motion referenced the *Teruel* class action complaint and the declaration of Jarrod Salinas, its request for judicial notice erroneously included a different complaint filed by Patricia Teruel, *see* 1st RJN Ex. 1, and Sky Chefs did not file Salinas's declaration with its motion.

Much of Sky Chefs' motion is devoted to the separate issue of Dmuchowsky's claim period, which the parties resolved by stipulation later the same day that the motion was filed. *See* Stipulation (dkt. 55); Order on Stipulation (dkt. 56).

#### 2. Dmuchowsky's Opposition

Dmuchowsky argues in his opposition brief that Sky Chefs failed to submit any evidence that Dmuchowsky did not opt out of the *Teruel* settlement, or that he received a settlement payment, noting that the declaration of Jarrod Salinas referenced in Sky Chefs' motion was not filed with the motion. Opp'n (dkt. 59) at 2, 5. Dmuchowsky presents no evidence showing that he opted out of the settlement or that he did not receive payment.

Dmuchowsky also argues that even if he is bound by the settlement, it does not cover his claim in this action, because the settlement "was *expressly* limited to **'all claims alleged in the Lawsuit'** arising out of the **'late payment of wages,'** *and* **the facts asserted in the Complaint**.'" Opp'n at 5 (excessive emphasis and mismatched internal quotation marks in original). Dmuchowsky notes that Sky Chefs failed to submit the correct *Teruel* complaint with its motion, and argues that the "primary right" at issue in this action is not "late" payment, but failure to provide overtime compensation that would have been paid if Dmuchowsky had not been classified as an exempt employee. *Id.* at 5–6. According to Dmuchowsky, the issue is comparable to that faced by a California appellate court in *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 686–88 (2008), where the court held that an earlier settlement did not foreclose a claim because it did not address identical issues based on a "primary right" framework.

4

1    Opp'n at 5. Dmuchowsky argues that a decision cited by Sky Chefs, *Villacres v. ABM Industries,*
2    *Inc.*, 189 Cal. App. 4th 562, 577 (2010), is inapposite because, unlike here, the earlier settlement
3    in that case included a broader release of all claims that could have brought in the settled action.
4    Opp'n at 4–5.

### 3. Sky Chefs' Reply

Sky Chefs filed the correct *Teruel* complaint and Salinas's declaration with its reply, acknowledging its error in failing to file them with its motion but noting that it had previously provided both documents to Dmuchowsky's counsel before filing the motion. Reply (dkt. 63) at 5–6; Jang Reply Decl. (dkt. 63-1).

Sky Chefs argues that the release in the *Teruel* settlement is broader than Dmuchowsky represents it to be, noting that the settlement agreement releases "'*all claims* alleged in the Lawsuit,'" which the agreement defines as including claims for failure to provide wages when due under Labor Code sections 201 through 203, among other claims. Reply at 2 (quoting 1st RJN Ex. 2 § 15.1). Sky Chefs also notes that the phrase of the release concerning the facts asserted in the *Teruel* complaint follows the word "including," and argues that it therefore should not be taken as a limitation of the otherwise broader scope of the release. *Id.* at 3–4. According to Sky Chefs, the release in the *Consumer Advocacy* case on which Dmuchowsky relies was narrower than here—waiving only claims related to the release of specific chemicals, while the subsequent action concerned a different chemical—and the present case is more analogous to *Shine v. Williams-Sonoma, Inc.*, 23 Cal. App. 5th 1070 (2018), where a court held that claims were barred by a broad release in an earlier class action settlement. Reply at 4. Sky Chefs also contends that the "primary right" analysis used in California for questions of res judicata weighs in Sky Chefs' favor, not Dmuchowsky's, because the harm asserted in Dmuchowsky's seventh claim—which Sky Chefs characterizes as "untimely payment of all wages owed upon termination"—is the same as the harm at issue and released in *Teruel*. *Id.* at 4–5.

### 4. Dmuchowsky's Surreply

In a surreply filed with leave of the Court due to Sky Chefs' belated filing of Salinas's declaration and the correct *Teruel* complaint, Dmuchowsky objects to Salinas's declaration on the

1  basis that Salinas lacks personal knowledge of whether Dmuchowksy, as opposed to some other
2  person, signed and deposited the settlement check. Surreply (dkt. 65) at 1–2 & n.1. Dmuchowsky
3  also contends that there is no evidence that he did not opt out of the settlement. *Id.* at 1–2.
4  Dmuchowsky further argues that the allegations of the *Teruel* complaint are different than those
5  presented here, as Teruel alleged untimely payment of wages rather than failure to pay overtime
6  wages. *Id.* at 3.

### III. ANALYSIS

#### A. Legal Standard

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id*. at 1229; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir. 2003). Conclusory, speculative testimony in affidavits and arguments in moving papers are insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co.,*

*Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In considering Sky Chefs' motion, the Court therefore draws all reasonable inferences in favor of Dmuchowsky.

## B. Sky Chefs Is Entitled to Judgment

As a starting point, there is no legitimate dispute that Dmuchowsky is bound by the *Teruel* settlement. The standard of proof in this civil action is the preponderance of the evidence, which "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [the trier of fact] may find in favor of the party who has the burden.'" *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (citation omitted). Here, even if Salinas lacks personal knowledge of whether the signature on the settlement check is in fact Dmuchowsky's, his declaration and the attached check images constitute evidence that a settlement check from *Teruel* was made out to Dmuchowsky and deposited. With no evidence to the contrary, any rational finder of fact would conclude that it is more likely than not that the person who received and deposited Dmuchowsky's check was in fact Dmuchowsky. Any rational finder of fact would also conclude, based on the fact that a settlement check was made out to Dmuchowsky and deposited, that it is more likely than not that Dmuchowsky did not opt out of the settlement. Absent a declaration from Dmuchowsky or some other evidence suggesting that he opted out or that he did not receive the check deposited in his name, Dmuchowsky's arguments on this point are frivolous.[3]

The question, then, is whether the *Teruel* settlement bars the claim at issue in this case. As both parties acknowledge, California courts consider the preclusive effect of a class action settlement through the lens of the doctrine of res judicata. *See, e.g.*, *Villacres*, 189 Cal. App. 4th

---

[3] Although Dmuchowsky is primarily responsible for injecting this unnecessary issue into the motion, Sky Chefs also likely could have avoided the issue through better presentation of evidence from the settlement administrator, or through requests for admission.

7

at 577 ("Res judicata applies to a court-approved settlement agreement in a class action dismissed with prejudice."). "The doctrine is applicable 'if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding,'" and is applied only where preclusion of a claim would not result in injustice. *Id.* (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004)).

The dispute here concerns the second element, whether Dmuchowsky's claim under sections 202 and 203 of the Labor Code is the same cause of action as the *Teruel* class's claim under sections 201 through 203, as well as whether Sky Chefs has waived the full scope of its res judicata through the use of a narrower settlement agreement. *Cf. Shine*, 23 Cal. App. 5th at 1078 (discussing a similar waiver argument). California courts use the "primary right theory" to define a claim or cause of action. *Consumer Advocacy*, 168 Cal. App. 4th at 686. "'As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.'" *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002) (quoting *Crowley v. Katleman*, 8 Cal. 4th 666, 681–82 (1994)). In wage-and-hour cases, at least one California appellate court has construed the primary right at issue as the right "to seek payment of wages due," and applied res judicata even where different actions involved claims for different types of wages. *Shine*, 23 Cal. App. 5th at 1077 ("The fact that no claim for reporting-time pay was alleged in *Morales* does not alter our determination that the same primary right, to seek payment of wages due, was involved in both *Morales* and this case.").

Here, not only do both Dmuchowsky's seventh claim and the earlier *Teruel* settlement concern payment of wages due, both concern payment of wages due under the same statute, Labor Code section 203, which requires employers to continue to pay wages for up to thirty days after termination of employment if all wages owed at the time of employment were not paid on a timely basis. The fact that the alleged *reasons* for such delay differ—here, failure to account for overtime pay due to misclassification, while the reason for delay in *Teruel* is not clear from that complaint—does not alter the primary right at issue. *See Shine*, 23 Cal. App. 5th at 1077 (treating

8

1  claims for failure to pay wages for, e.g., "meal and rest periods, overtime and minimum wages" as
2  concerning the same primary right as a claim for "reporting-time" pay owed when a shift is
3  canceled on short notice).

4  Because both this claim and the claims settled in *Teruel* concern the same primary right,
5  res judicata applies unless Sky Chefs waived the full scope of that defense by entering a narrow
6  settlement agreement. *See id.* at 1078–82 (considering a waiver argument based on the text of the
7  earlier settlement agreement's release); *Villacres*, 189 Cal. App. 4th at 585–86 (same). The
8  release here is not as broad or clear as in *Shine* and *Villacres*, where earlier settlement agreements
9  released all claims that were or "could have been asserted" for nonpayment of wages or violation
10 of the Labor Code. *Shine*, 23 Cal. App. 5th at 1080; *Villacres*, 189 Cal. App. 4th at 585–86.
11 Instead, the *Teruel* release pertains in relevant part to "all claims alleged in the Lawsuit [including]
12 Failure to Provide Wages When Due in Violation of California Labor Code §§ 201, 202 and 203,"
13 and goes on to define the release as governing "all claims and rights . . . arising out of . . . the
14 alleged late payment of wages due upon separation of employment." 1st RJN Ex. 2 § 15.1.

15 Dmuchowsky argues that his claim does not fall within that scope because the overtime
16 wages he contends that he was owed were not paid "late," but instead were not paid at all. This
17 argument conflates his first claim for failure to pay overtime wages, which is not in dispute on the
18 present motion, with his seventh claim, at issue here, for a "waiting time penalty" for failure to pay
19 wages at the time of separation. *See* Notice of Removal Ex. A (Compl.) ¶¶ 13, 25. Sky Chefs
20 does not contend that the *Teruel* release bars Dmuchowsky from recovering overtime wages he
21 was not paid. Instead, the only claim on which Sky Chefs seeks summary judgment is for failure
22 to pay the waiting time penalty under section 203, which would consist of wages for an additional
23 thirty days, purportedly owed for failure to pay all wages *when due* after termination. The release
24 specifically governs claims under sections 201 through 203, and the theory that additional wages
25 are owed for failure to meet a deadline under section 203 falls within any reasonable reading of
26 the phrase "late payment of wages due upon separation" in the release. *See* 1st RJN Ex. 2 § 15.1.

27 Dmuchowsky also argues that release is limited by a phrase that follows those addressed
28 above: "claims alleged in the Complaint for violations of sections 201, 202 and 203 of the

California Labor Code based upon the late payment of wages due upon separation of employment and the facts asserted on the Complaint." *Id.* Dmuchowsky focuses in particular on the end of that phrase—"and the facts asserted on the Complaint"—which he contends excludes his claim here from the release, because Teruel's complaint included no allegations of failure to pay overtime wages. *See* Opp'n at 5–6; Surreply at 3. Dmuchowsky does not address Sky Chefs' argument that this phrase is illustrative rather than limiting, *see* Reply at 3–4, based on the use of the word "including" to introduce it:

> Plaintiff and all members of the settlement class fully and finally release and discharge [Sky Chefs] from any and all claims and rights that they may have . . . arising out of (1) the alleged late payment of wages due upon separation of employment, *including* all claims alleged in the Complaint for violations of sections 201, 202 and 203 of the California Labor Code based upon the late payment of wages due upon separation of employment and the facts asserted on the Complaint, including all claims for attorney's fees, litigation and costs, PAGA penalties, and interest predicated thereon.

1st RJN Ex. 2 § 15.1 (emphasis added).

While the release could certainly be clearer, Sky Chefs has the better argument. Dmuchowsky asks the Court to read the word "including" as equivalent to "meaning" or "limited to." As a matter of ordinary meaning and as recognized in case law, "the word 'including' . . . is 'ordinarily a term of enlargement rather than limitation.'" *Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th 709, 717 (2003) (citation omitted) (considering this issue in the context of statutory interpretation). Based on a plain reading of the release language, it would make no more sense to limit the release of claims arising out of late payment to "the facts asserted on the Complaint" than it would to construe the release as not encompassing claims for damages but instead only "claims for attorney's fees, litigation and costs, PAGA penalties, and interest predicated thereon"—a phrase in the same sentence that is similarly introduced with the word "including." Giving meaning to the word "including," claims based on the facts of Teruel's class action complaint are *within* the scope of the release, but do not constitute the *extent* of the release. The release encompasses claims "arising out of . . . the alleged late payment of wages due upon separation of employment," 1st RJN Ex. 2 § 15.1, which includes Dmuchowsky's seventh claim here. Sky Chefs has not waived its res judicata defense as to that claim.

10

The case on which Dmuchowsky primarily relies, *Consumer Advocacy*, is not analogous and does not alter the outcome. There, an earlier settlement agreement specifically resolved claims pertaining to the "discharge or release of *benzene and/or toluene*." *Consumer Advocacy*, 168 Cal. App. 4th at 688. The court held that the agreement did not bar a new claim for discharge of lead, even though both claims related to the release of gasoline constituents. *Id.* at 688–89. As discussed above, the release here includes no limitation comparable to the language at issue in *Consumer Advocacy*.

## IV. CONCLUSION

For the reasons discussed above, Sky Chefs' motion for partial summary judgment as to Dmuchowsky's seventh claim is GRANTED. This order has no effect on Dmuchowsky's other claims.

**IT IS SO ORDERED.**

Dated: November 9, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge